# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES GABRIEL STERNER, a minor, and | : |
| | : |
| JAMES HAROLD STERNER<br>No. 26 Parker Avenue<br>Franklin, PA  16323 | : |
| | : Civil Action |
| Plaintiffs | JURY TRIAL DEMANDED |
| v. | : |
| TITUSVILLE AREA SCHOOL DISTRICT<br>221 North Washington Street<br>Titusville, PA  16354 | : |
| | : |
| KAREN JEZ<br>Superintendent<br>Titusville Area School District<br>222 West Walnut Street<br>Titusville, PA  16354 | :<br><br>:<br><br>: |
| DEBORAH FORKER<br>Principal<br>Pleasantville Elementary School<br>274 North Main Street<br>Pleasantville, PA  16341 | :<br><br>:<br><br>: |
| BETH F. MATHER<br>Director of Special Education<br>Titusville High School<br>302 East Walnut Street<br>Titusville, PA  16354 | :<br><br>:<br><br>: |
| JENNIFER CORKLIN<br>First Grade Teacher<br>Pleasantville Elementary School<br>274 North Main Street<br>Pleasantville, PA  16341 | :<br><br>:<br><br>: |
| CYNTHIA NOSKO<br>Educational Aide | : |

1

**Pleasantville Elementary School**
**274 North Main Street**                                            :
**Pleasantville, PA  16341**

                                                                                                     :

    **Defendants**

## FIRST AMENDED COMPLAINT

### Jurisdiction

1. This action is brought pursuant to 42 U.S.C. §1983. Jurisdiction is based upon 28 U.S.C. §§1331 and 1343 (1), (3), (4) and the aforementioned statutory provision. Plaintiff further invokes the supplemental jurisdiction of the Court to hear and adjudicate state law claims, pursuant to 28 U.S.C. §1367(a).

### Parties

2. Plaintiff, James Harold Sterner, is a resident of Pennsylvania and at all times relevant to this action was present with, knew of, and dealt with all actions in this suit, which affected himself and his son.

3. Plaintiff, James Gabriel Sterner, the son of James Harold Sterner, is a resident of Pennsylvania and at all times relevant to this action was present in Pennsylvania.

4. Defendants, Titusville Area School District, Titusville School District Superintendent Karen Jez, Pleasantville Elementary School Principal Deborah Forker, Director of Special Education Beth Mather, First Grade Teacher Jennifer Corklin, and Educational Aide Cynthia Nosko at all times were acting under color of state law.

5. At all relevant times Defendants were acting in a way that deprived James Gabriel Sterner of his constitutional and statutory rights.

### Factual Allegations

6. At the time of the incident that caused injury to the Plaintiffs, James Gabriel Sterner was six years old and was a first grade student at Pleasantville Elementary School.

7. James Gabriel Sterner is diagnosed with Asperger's Syndrome, Autism.

8. James Gabriel Sterner receives learning support services from Youth Advocate Program.

9. At the time of the incident, James Gabriel Sterner's Therapeutic Support Staff (TSS) person was Kourtney Josephic, who was assigned and supervised by the Youth Advocate Program.

10. At the time of the incident, TSS Kourtney Josephic was assigned full time to James Gabriel Sterner at Pleasantville Elementary School.

11. On February 17, 2006, Educational Aide Cynthia Nosko was present in James Gabriel Sterner's classroom.

12. On February 17, 2006 James Gabriel Sterner had a verbal outburst in the classroom at Pleasantville Elementary School.

13. During James Gabriel Sterner's outburst, Aide Cynthia Nosko placed a large amount of liquid hand sanitizer in her hand and held it over James Gabriel Sterner's mouth until he swallowed the liquid.

14. Aide Cynthia Nosko then told TSS Kourtney Josephic: .This is the way we handle little boys who use bad words in our house.

15. TSS Kourtney Josephic prepared a formal report relative to the unlawful actions taken by Aide Cynthia Nosko on February 17, 2006.

16. Aide Cynthia Nosko acted willfully, deliberately, maliciously and with reckless disregard of James Gabriel Sterner's constitutional and statutory rights.

17. Aide Cynthia Nosko is responsible because she physically assaulted James Gabriel Sterner, a disabled minor child.

18. Aide Cynthia Nosko acted in a willful, malicious, reckless and dangerous manner when she forced James Gabriel Sterner to swallow hand sanitizer.

19. Aide Cynthia Nosko assaulted James Gabriel Sterner with reckless disregard for the needs of a disabled, autistic child.

20. Aide Cynthia Nosko exhibited a lack of training and compassion and a complete disregard for the statutory and constitutional rights of James Gabriel Sterner.

21. Aide Cynthia Nosko failed to utilize the least restrictive means to address James Gabriel Sterner's outburst.

22. Aide Cynthia Nosko's actions have caused irreparable harm to James Gabriel Sterner.

23. The Titusville School District is liable because its policy, lack of policy, hiring decisions, lack of training, and customs all contributed to the harm suffered by Plaintiff son.

24. Plaintiffs avers that the Titusville Area School District is liable because they have a school district "policy or custom that caused plaintiff's (s') injury (ies)." <u>Rory M. Walsh, individually and as a Natural Guardian of C.R.W, Plaintiff v. Dr. Robert Krantz et al. United States Court For The Middle District of Pennsylvania 2008 U.S. Dist. LEXIS 44204, June 4, 2008 Decided citing Monell v. Dept of Social Services, 436 U.S. 658, 649, 98 S.Ct. 2018</u>

25. Plaintiff's aver through discovery and private investigation Titusville Area School District has repeatedly ignored parent complaints concerning proper educational placement for their children.

26. Plaintiff avers through discovery and private investigation Titusville Area School District policy and custom is based on non-communication, intentional mis-information, retaliation, and refusal to inform parents of their (parent's) administrative appeal rights for proper educational placement, are a direct cause of Plaintiff's injuries.

27. Plaintiff's further aver that this policy and custom is "so permanent and well settled as to virtually constitute law". <u>Andrews v. City of Philadelphia 895 F. 2d 1469, 1480 (3d Cir.1990).</u>

28. By non-communication, intentional miss-information, lack of information, retaliation and refusal to inform plaintiff of administrative appeal rights for proper educational placement all defendants followed this "law" of benign ignorance and this policy and custom is a direct causal link between the school district actions and Plaintiff's injuries.

29. Plaintiff further avers and believes this policy and custom of miss-information, lack of information, non-communication, retaliation, and refusal to explain administrative actions and appeal rights to Plaintiff father was a repetitive pattern with parents of special need children in the Titusville Area School District.

30. Plaintiff believes all defendants actions were so complete, so negative, coordinated, and retaliatory that discovery and private investigation will show a past practice pattern for parents and children similarly situated.

31. Principal, Deborah Forker, is liable because at all times relevant to this complaint she refused to modify the learning environment of James Gabriel Sterner, which is the setting where James Gabriel Sterner irreparable harm occurred.

32. Plaintiff, James Harold Sterner, father, repeatedly asked Principal Deborah

4

Forker to remove his son from a marked off corner of a regular classroom.

33. Plaintiff father repeatedly asked Principal Deborah Forker not to isolate his son in this manner.

34. Plaintiff father repeatedly asked Principal Deborah Forker for his son to be placed in a full-time learning support classroom with other students at his son's developmental level.

35. Plaintiff father repeatedly complained to Deborah Forker that his son was being ignored, not helped, by this mainstreaming approach.

36. At all times Principal Deborah Forker refused to modify in any way the educational isolation of Plaintiff, James Gabriel Sterner.

37. At all times relevant to this complaint, Principal Deborah Forker ignored Plaintiff father's suggestions and reasons for requesting a change in his son's learning environment.

38. Principal Deborah Forker's reckless disregard for Plaintiff father's request for full-time learning support was a precursor to Plaintiff son's injury.

39. Principal Deborah Forker placed Plaintiff son in a learning environment that was not the least restrictive alternative, and which caused irreparable harm to Plaintiff son.

40. Principal Deborah Forker's disregard for Plaintiff father's learning support requests directly contributed to Plaintiff's son's social and emotional regression, which caused Plaintiff son's outburst in class.

41.  Plaintiff avers that Defendant Forker's actions are repetitive and long standing in regards to treatment of parents and children similarly situated.

42. Plainitff avers that discovery and private investigation will show her actions to be long standing and retaliatory in depriving children of proper educational placement.

43. Principal Deborah Forker's failure to provide competent learning support, Principal Deborah Forker's decision to isolate Plaintiff son in a corner of a regular classroom, Principal Deborah Forker's tolerance of untrained and incompetent support staff, and Principal Deborah Forker's tolerance of the assault on Plaintiff son demonstrate reckless disregard for the needs and rights of Plaintiff son, a disabled child.

44. Principal Deborah Forker also required Plaintiff father to always have arms length availability to control his son.

45. Principal Deborah Forker required Plaintiff father to be on call and available to come to the school at a moment's notice in the event there were any problem with his son.

46. Principal Deborah Forker even called Plaintiff father and told him he needed to come to the school immediately when there was not any problem with his son, in an effort to test Plaintiff father's response time.

47. Plaintiff father missed work and lost work opportunities because of Principal Deborah Forker's actions and requirements of him.

48. Principal Deborah Forker's reckless disregard for Plaintiff father's work schedule and work opportunities deprived him of income and employment opportunities.

49. Superintendent Karen Jez at all times was aware of Plaintiff son's learning conditions and of Plaintiff father's requests for a change in his son's learning program.

50. Plaintiff father repeatedly requested to meet with Superintendent Karen Jez; however, Plaintiff father was informed that Superintendent Karen Jez did not want to deal with parents directly.

51. In an attempt to overcome Superintendent Karen Jez aversion to speak directly with a parent, Plaintiff father made a detailed phone message request to Superintendent Karen Jez for a change in Plaintiff son's educational program.

52. Plaintiff father repeatedly tried to inform Superintendent Karen Jez of his child's needs, the failure of school officials to meet his child's needs, and the inappropriateness of isolating his child in a marked off corner of a regular classroom.

53. Plaintiff avers that Superintendent Karen Jez informed her subordinates that it was her policy not to communicate with Plaintiff father regarding his son, and as a result of her policy, no other administrative employees would communicate with Plaintiff father in any meaningful way relative to Plaintiff son.

54. The standard of care provided to Plaintiff father and to Plaintiff son was below that which was provided to other parents and children.

55. The standard of care provided to Plaintiff father and to Plaintiff son was below that which is mandated by law.

56. By ignoring Plaintiff father's requests as well as the legal right of a disabled

child to have an appropriate educational setting, properly trained teachers and aides, and the least restrictive learning environment, Superintendent Karen Jez showed reckless disregard and indifference to the needs and rights of Plaintiff son, and Superintendent Karen Jez's actions and inactions directly contributed to the assault on Plaintiff son.

57. Superintendent Karen Jez acted outside the scope of her authority in ignoring the assault inflicted on Plaintiff son. By ignoring Plaintiff father's request and complaints she became a direct casual link to plaintiff's injuries.

58. Plaintiff father avers that discovery and private investigation will show Superintendent Jez's actions were a constant and repetitive pattern for other parents and children in need of special education alternatives and demonstrate a direct casual link between the school district policy or custom and the injury and constitutional deprivation on Plaintiff son.

59. Defendant Beth F. Mather, Director of Special Education, is liable because she failed to provide proper training to school personnel who interacted with special education or special needs children, including Plaintiff son.

60. Director Beth F. Mather is liable because she decided which learning environment and educational program was suitable for Plaintiff son, over the strong objections of Plaintiff father. Director Beth F. Mather's decision resulted in an assault upon Plaintiff son.

61. Plaintiff father repeatedly requested that Director Beth F. Mather approve full-time learning support for his son, which Director Beth F. Mather refused.

62. Director Beth F. Mather, with little or no knowledge of Plaintiff son's situation, consistently refused to change Plaintiff son's educational program.

63. In spite of repeated specific requests for educational program changes along with valid reason for these changes, Director Beth F. Mather remained constant in denying these requests by Plaintiff father.

64. Plaintiff father was consistently told in a long series of contacts with Director Beth F. Mather that no further help could be given to his son.

65. Plaintiff father avers that discovery and investigation will show that Defendant Mather's actions were part of a repetitive pattern with a direct casual link not only to Plaintiff son's injuries but also to other similarly situated parents and children.

66. Director Beth F. Mather's exhibited reckless indifference to the special education needs of Plaintiff son, by failing to properly train and supervise those educational providers who had contact with autistic children.

67. As a result of Director Beth F. Mather's reckless disregard for educational equality and opportunity, lack of proper training and supervision of those educational providers in contact with autistic children, refusal to listen to or take action on the numerous requests made by Plaintiff father, and general indifference to Plaintiff father's requests, led to the assault on Plaintiff son by school personnel, Plaintiff son's isolation in a classroom corner, and Plaintiff son's institutionalization by the Office of Children and Youth at the direction of some or all of the Defendants.

68. Jennifer Corklin, Plaintiff son's First-Grade teacher at Pleasantville Elementary School, is liable because she was the supervising person in the classroom at the time of the incident.

69. Teacher Jennifer Corklin knew that Plaintiff son was a disabled minor who required a higher degree of care. Teacher Jennifer Corklin failed to properly supervise, educate, instruct and make Aide Cynthia Nosko aware of Plaintiff son's special needs.

70. Teacher Jennifer Corklin's approval of the learning environment of an isolated corner of a classroom contributed to plaintiff son's outburst.

71. Teacher Jennifer Corklin's complete lack of disciplinary response to Aide Cynthia Nosko, who assaulted Plaintiff son, showed reckless indifference to the needs of a special education student and to Plaintiff father.

72. As the lead person in the classroom, Teacher Jennifer Corklin had a responsibility to supervise and act in a responsible manner toward disabled children. Teacher Jennifer Corklin breached that responsibility when she allowed an aide to assault Plaintiff son in her classroom.

73. Plaintiff father avers and believes that discovery and investigation will show teacher Jennifer Corklin's indifference to the plight of Plaintiff son was a repetitive and conscious act that deprived other similar situated children and parents of their procedural and constitutional rights.

74. Plaintiff further avers discovery and investigation will show Defendant Corklin's acts were constant and repetitive and demonstrate a direct casual link between school district policy and custom and the constitutional depravation of the rights of Plaintiff's and other similarly situated children and parents.

75. Teacher Jennifer Corklin's lack of remedial action showed reckless indifference to the needs of a special education child entrusted to her care. Teacher Jennifer Corklin's indifference to this assault caused Plaintiff son's behavior to spiral downward from the level attained prior to the assault.

76. It is believed and therefore averred that the Titusville School District did

not terminate the employment of Cynthia Nosko subsequent to her assault on Plaintiff son.

77. It is believed and therefore averred that Cynthia Nosko is still employed as a teacher's aid in the Titusville School District, which lists Cynthia Nosko as an educational aid at Main Street Elementary School.

78. The Titusville School District is liable because it failed to take any action to remedy the harm caused by an educational aid working for the District to a disabled child attending school in the District.

79. All defendants. refusal to provide Plaintiff son with the least restrictive learning environment contributed to Plaintiff son's outbursts, and the subsequent assault on Plaintiff son.

80. Plaintiff son has negative reactions around females and after a specific school incident Plaintiff father, police and the Office of Children and Youth were called to the school.

81. An Office of Children and Youth caseworker told Defendant father: ."You have your son committed at Clarion Psychiatric by 6:00 p.m. today or we will come in the home and take him there ourselves".

82. Plaintiff father avers and affirms this specific incident was retaliation.

83. This reckless indifference to Plaintiff son's learning needs and use of another government agency (the Office of Children and Youth) to institutionalize Plaintiff son was retaliatory and also deprived Plaintiffs of their rights.

84. Because of Defendants. actions both individually and collectively Plaintiff son was medicated, adversely reacted to his medication, and had his blood pressure flat-line to the point they could not detect blood pressure.

85. Plaintiff son could have died from this reaction.

86. Out of grave concern for the safety of a patient a floor nurse reported the seriousness of the incident to Plaintiff father.

87. Plaintiff father was also informed by the same nurse that this medication was still scheduled to be administered to Plaintiff son the next day.

88. Plaintiff father confronted the prescribing physician with this information, and as a result, Plaintiff son being discharged the next day.

89. Hospital personnel told Plaintiff father they were not set up to handle

autistic children.

90. Defendants, Titusville Area School District, Titusville School District Superintendent Karen Jez, Pleasantville Elementary School Principal Deborah Forker, Director of Special Education Beth Mather, First Grade Teacher Jennifer Corklin, and Educational Aide Cynthia Nosko at all times had a duty to protect James Gabriel Sterner from unlawful and unconstitutional acts.

91. Defendants, Titusville Area School District, Titusville School District Superintendent Karen Jez, Pleasantville Elementary School Principal Deborah Forker, Director of Special Education Beth Mather, First Grade Teacher Jennifer Corklin, and Educational Aide Cynthia Nosko at all times had a duty to provide James Gabriel Sterner with the least restrictive learning environment.

92. The duty of care owed to James Gabriel Sterner is higher than the duty owed to the average first-grade student who is not disabled.

93. The duty of care owed to James Gabriel Sterner is higher because he is disabled.

94. The Defendants. actions and inactions relative to the unlawful incident that occurred on February 17, 2006 demonstrated a lack of training, supervision, and conduct, as well as willful, deliberate, malicious and reckless disregard for James Gabriel Sterner's constitutional and statutory rights.

95. Defendants lack of training, supervision, and conduct violated James Gabriel Sterner's constitutional and statutory rights by subjecting him to an unlawful assault and battery.

96. As a direct and proximate result of the actions and inactions of the Defendant, James Gabriel Sterner suffered and continues to suffer physical and psychological harm, as well as pain and suffering, some or all of which may be permanent, as well as financial losses.

97. As a direct and proximate result of the actions and inactions of the Defendant, James Harold Sterner, suffered and continues to suffer psychological harm, emotional harm, some or all of which may be permanent, as well as financial losses.

98. The failure to train, the inadequacy of training, and the need for more training is so obvious that the policy makers have shown deliberate indifference.

99. Established law, policy, and regulations provide all Defendants with fair

warning that employee assaults on disabled children are unconstitutional.

100. As a direct result of this assault, Plaintiff son has become reactionary and now assaults women.

101. As a direct action of this assault, Plaintiff son has been institutionalized.

102. As a direct action of the assault, Plaintiff son has seriously regressed educationally and socially, and lost all of the educational and social advancements he had made prior to the time of the assault.

103. As a result of this assault, Plaintiff son now requires constant one-on-one care at home.

104. As a result of this assault, Plaintiff father must constantly be available when Plaintiff son is attending school.

105. As a result of the actions and inactions of all defendants, plaintiff father's health has deteriorated and he is currently under specialized care for a physical condition caused by the stress and anxiety that followed the assault on Plaintiff son.

106. As a result of the actions and inactions of all defendants, plaintiff father is now unable to maintain full-time employment.

## FIRST CAUSE OF ACTION
### Federal Civil Rights Violations

107. Plaintiffs incorporate by reference paragraphs 1 to 106 of this Complaint.

108. As a direct and proximate result of all of Defendants. conduct committed under color of state law, Plaintiffs were deprived of their right to be free from unreasonable and excessive force, assault, battery, psychological harm and financial loss. They suffer and continue to suffer harm in violation of their rights under the Laws and Constitution of the United States in particular 42 U.S.C. §1983.

109. As a direct and proximate result of the acts of all Defendants the Plaintiffs sustained physical injuries, emotional harm, and financial losses, all to their detriment and harm.

110. Defendants have by their described actions deprived the Plaintiffs of rights secured by the United States Constitution in violation of 42 U.S.C. §1983

111. The Titusville School District, Superintendent Jez, and all defendants were grossly negligent and deliberately indifferent in failing to prevent their employees

from violating plaintiff son's constitutional rights.

## SECOND CAUSE OF ACTION
## Supplemental State Claims

112. Plaintiffs incorporate by reference paragraphs 1 to 111 of this Complaint.

113. The acts and conduct of individual Defendant Teacher Aide, Mrs. Nosko, constitutes assault, battery, and intentional infliction of emotional distress under the laws of the Commonwealth of Pennsylvania, and this Honorable Court has supplemental jurisdiction to hear and adjudicate these claims.

114. The acts and conduct of the other Defendants contributed to the assault, battery, and intentional infliction of emotional distress on plaintiff son.

115. The Titusville School District and Superintendent Jez were grossly negligent and deliberately indifferent in failing to prevent their employees from violating plaintiff son's constitutional rights.

WHEREFORE, Plaintiffs request the following relief:

For both state and federal claims
1.  Compensatory Damages in the amount of One Million Dollars ($1,000,000.00.)

2. Punitive Damages in the amount of One Million Dollars for state claims ($1,000,000.00.)

3. Reasonable attorney fees and costs.

4. Such other relief and future relief as appears reasonable and just.

5. A jury trial as to each Defendant and as to each count.


Date:11/25/2008                     /s/ Anthony B. Andrezeski, Esq.

                                                 Anthony B. Andrezeski, Esq.
                                                 Counsel for Plaintiff
                                                 Attorney ID No. 88995
                                                 317 Erford Road
                                                 Camp Hill, PA 17011