IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JGS, a minor and JAMES HAROLD STERNER, | )<br>) |
| Plaintiffs, | ) |
| v. | ) C.A. No. 08-39 Erie<br>) District Judge McLaughlin |
| TITUSVILLE AREA SCHOOL DISTRICT, *et al.*, | ) |
| Defendant. | )<br>)<br>) |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon a motion for summary judgment filed by Defendants Jennifer Corklin and Cynthia Nosko ("Corklin" and "Nosko") against Plaintiffs JGS, a minor student, and his father, James Sterner ("Sterner").[1] For the reasons which follow, Defendants' motion for summary judgment will be granted.

**I. BACKGROUND**

Plaintiff JGS, a minor, is an autistic student with an identified disability that made him eligible for special education services. During the 2005-06 school year, JGS was enrolled in first grade in the Titusville Area School District. Defendant Corklin was the special education teacher

---

[1] In their Complaint, Plaintiffs originally named the Titusville School District, Superintendant Karen Jez, Pleasantville Elementary School Principal Deborah Forker, and Director of Special Education Beth F. Mather as defendants in addition to Nosko and Corklin. On April 2, 2009, this Court entered an order dismissing all claims against Forker, Mather and the Titusville School District. The motion to dismiss was denied as to Nosko and Corklin.

1

assigned to his classroom and Defendant Nosko assisted Corklin as a teacher's aide. (Nosko Aff. Paragraphs 2-3; Corklin Aff. Paragraph 4).

Throughout the 2005-06 school year, JGS frequently engaged in verbal and physical outbursts that included loud and profane screaming, threats of force and violence, and suggestions of his intent to physically harm other students and personnel. (Sterner Depo., p. 15; Nosko Aff. Paragraph 6; Corklin Aff. Paragraph 7). These outbursts included threats to kill various individuals and were often accompanied by physically aggressive behavior including kicking, biting, striking and spitting upon teachers and, occasionally, fellow students. (Sterner Depo. pp. 15-16; Corklin Aff. Paragraphs 7-8; Nosko Aff. Paragraphs 6-7). On several occasions, including one in which JGS stabbed another student with a sharpened pencil, his outbursts resulted in minor physical injuries such as bruises and cuts. During his outbursts, Nosko and Corklin would sometimes remove the other students from the classroom in order to maintain order.

On February 16, 2006, JGS was working one-on-one with Kourtney Josephic, a counselor assigned to work with JGS through Therapeutic Support Services, when he abruptly stood up and began screaming obscenities at other students. (Corklin Aff. Paragraphs 17-21; Nosko Aff. Paragraphs 15-19). At the time, Nosko was sitting at her desk and Corklin was teaching several students at the other end of the classroom. Nosko asked Josephic if she required assistance with JGS and Josephic indicated that she did. The parties offer divergent accounts of what happened from this point forward.

In the Complaint, Plaintiffs contend that, in response to JGS's outburst, Nosko placed some liquid hand sanitizer in her hand, held it over JGS's mouth and forced him to ingest it. (JGS Depo., p. 13). Nosko allegedly informed JGS that "This is the way we handle little boys who use bad words in our house." (First Amended Complaint, Paragraph 14).

Nosko denies ever forcing JGS or any other student to swallow liquid hand sanitizer. (Nosko Aff. Paragraphs 21; 27-28). According to Nosko, when JGS began acting out on February 16, 2006, she initially attempted to verbally dissuade JGS by instructing him to stop yelling and

encouraging him to return to his prior activity. When that failed, Nosko states that she gently placed her hand over JGS's mouth for one or two seconds and instructed him to "be quiet." (Id. at 20-21). Nosko denies that she applied any degree of force or that she held JGS's mouth opened or closed or forced him to ingest anything. (Id. at 27-28). She acknowledges using liquid hand sanitizer on her hands throughout the work day for routine sanitation purposes, but denies having placed any within JGS's mouth. When Nosko's efforts to calm JGS failed, she proceeded to remove the other students from the classroom while Corklin physically restrained JGS.

Following the incident, Corklin observed that JGS did not choke, gag, cough or indicate any physical discomfort as a result of his interaction with Nosko. He eventually settled down and took a nap before finishing school. Upon arriving home, JGS did not complain of any symptoms or exhibit any physical injury. (Sterner Depo., p. 22). He did not vomit and, according to Sterner, "seemed to be okay" physically. (Id. at pp. 23, 25-26). Sterner's family physician and local poison control center each advised him to observe JGS and seek medical attention if necessary, but indicated that JGS would have had to swallow "more than a bottle or so" for it to be an extreme emergency. (Id. at 24). Sterner concedes that JGS did not suffer any physical injury as a result of the alleged incident. (Id. at 24-26). However, he contends that JGS has experienced various psychological injuries. Specifically, Sterner alleges that JGS has become reactionary and violent towards women, has regressed socially and educationally, and requires more attention at home. (Sterner Depo., pp. 34).

## II. STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its

3

response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3rd Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3rd Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare

assertions, conclusory allegations or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### III. ANALYSIS

In the First Amended Complaint, Plaintiffs' assert a substantive due process claim based upon the allegation that Nosko and Corklin violated JGS's right to bodily integrity in violation of the Fourteenth Amendment of the United States Constitution when Nosko allegedly forced JGS to ingest hand sanitizer. The Fourteenth Amendment prohibits the State from depriving an individual of life, liberty or property without due process of law. U.S. Const. Amend. XIV. The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Gottlieb v. Laurel Highlands School Dist., 272 F.3d 168, 172 (3rd Cir. 2001) (quoting Collins v. Harker Heights, 503 U.S. 115, 125 (1992)).

In Ingraham v. Wright, the United States Supreme Court held that physical punishment of a student by a state actor fell within the scope of the liberty interests protected by the Fourteenth Amendment. Ingraham, 430 U.S. 651, 672 (1977). In order to establish a constitutional violation in a school corporal punishment case, the conduct alleged must "properly be characterized as arbitrary, or conscience shocking . . .". County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998). The Fourth Circuit has described a trial court's inquiry in a case alleging excessive force in a public school as follows:

> As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

5

Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980) (cited with approval by the Third Circuit in Gottlieb, 272 F.3d at 173). To "avoid conflating the various elements of the shocks the conscience test into a vague impressionistic standard," the Court in Gottlieb identified the following factors as relevant to a determination as to whether corporal punishment by a state actor violates substantive due process:

> a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

Gottlieb, 272 F.3d 173. Crediting, as I must, the Plaintiffs' contention that Nosko forced JGS to consume liquid hand sanitizer, the issue is whether that conduct, when viewed against the backdrop of the Gottlieb test, "amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Id. (citing Hall, 621 F.2d at 613). Because I conclude that the absence of any injury is dispositive of the inquiry, I address this factor first.

A review of the caselaw in the context of school corporal punishment reveals that the absence of a serious injury as a result of the alleged excessive use of force is fatal to a plaintiff's substantive due process claim. In Kurilla v. Callahan, for example, a teacher supervising a study hall in which a fight broke out between two students responded by seizing one of the students by the shirt and yanking him forward, causing the teacher's closed fists to strike the student's chest. Kurilla, 68 F.Supp.2d 556 (M.D. Pa. 1999). As a result of the incident, the student suffered bruising and redness in his chest, resulting in a trip to the family physician. Id. at 557. The court held that, while the teacher's behavior was certainly "overzealous," it could not be considered " a brutal and inhumane abuse of official power" because it had not resulted in "severe" injury:

> In this case, [the teacher's] punching of Kurilla in the chest caused a bruise and some red marks. While Kurilla sought medical care, there is no evidence that medical attention was reasonably necessary. Kurilla's injuries did not even warrant x-ray examination or prescription of any medication. Thus, Kurilla's injuries could hardly be described as "severe."

Kurilla, 68 F.Supp.2d at 564. The court contrasted the minor bruising suffered by Kurilla with the types of "severe" injuries displayed in other cases:

> The slight injury in this case contrasts sharply with the injuries sustained in school excessive force cases where summary judgment was denied. For example, in Metzger, the student sustained a broken nose, fractured teeth, lacerations and other injuries requiring hospitalization. In Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980), a student had been beaten with a paddle to such a degree that hospitalization for a period of ten days was required. In Garcia by Garcia v. Miera, 817 F.2d 650, 658 (10th Cir. 1987), cert. denied, 485 U.S. 959 (1988), a student had been hit multiple times with a split board causing bleeding and a permanent scar. In Webb v. McCullough, a student was slapped, hit with a door and thrown against a wall by the school principal.

Kurilla, 68 F.Supp.2d at 564 n. 7; see also Thomas v. West Greene School Dist., 467 F.Supp.2d 483, 491 (W.D. Pa. 2006) (concluding that claims of "minor bruising and tenderness" . . . "very clearly [do] not rise to the level of serious injury.").

Similarly, in Brown v. Ramsey, an autistic student claimed that his teacher and an assistant physically abused him by repeatedly placing him in a painful "basket hold" that resulted in a choking sensation and temporary suffocation. Brown v. Ramsey, 121 F.Supp.2d 911, 920 (E.D. Va. 2000). The teachers allegedly employed this hold approximately 40 different times to restrain the student when his behavior became uncontrollable or dangerous. Aside from the temporary choking sensation, the student conceded that he had not suffered any physical injury as a result of the allegedly abusive basket hold and had not sought medical treatment. Rather, he claimed to be suffering from Post-Traumatic Stress Disorder as a result of the incident. After an extensive review of the types of injuries addressed in other disciplinary corporal punishment cases, the court concluded that the student's allegations of psychological trauma fell far short of the level of severity required in order to establish a constitutional violation:

> [A]s the caselaw discussed above makes clear, Hall requires a "severe" injury; Daniel's only injury appears to be that he experienced some pain and suffering at the time of the alleged abuse (for which he never sought medical attention) and that he either currently suffers or has suffered from Post-Traumatic Stress

Disorder. The alleged incidents of abuse never manifested any physical injury in Daniel, and he was never taken to or treated by a medical doctor in connection with these alleged incidents. The lack of any physical injury in this case contrasts sharply with the severe physical injuries sustained in school excessive force cases where summary judgment was denied. See, e.g., Metzger, 841 F.2d at 521 (student sustained a broken nose, fractured teeth, lacerations, and other injuries requiring hospitalization); Webb, 828 F.2d at 1154 (student was slapped, hit with a door, and thrown against a wall by a school principle); Garcia, 817 F.2d at 658 (student was hit multiple times with a split board causing bleeding and a permanent scar); Hall, 621 F.2d at 607 (student was beaten with a paddle to such a degree that hospitalization for a period of ten days was required). Plaintiff has not cited, and the Court is not aware, of any reported corporal punishment case that has survived a summary judgment motion where the plaintiff has not sustained a physical injury but instead claims to suffer from Post-Traumatic Stress Disorder or some other similar psychological injury. Conversely, numerous courts have granted summary judgment or motions to dismiss against plaintiffs even where the plaintiff could show real and actual physical injury. See, e.g., Darden, 1988 WL 40083 (student given three licks with paddle resulting in reddish-blue discoloration of his buttocks); Kurilla, 68 F.Supp.2d at 558 (student suffered bruise, red marks, and anxiety attacks from teacher's punch to the chest); Jones, 931 F.Supp. at 365 (teacher threw student over a desk, causing injury); Brown, 710 F.Supp. at 183 (student left severely bruised from being spanked seven times with a paddle over a thirty minute period did not "shock the conscience" of the court); Brooks, 569 F.Supp. at 1535 (pricking a student in the arm with a straight pin does not rise to the level of a constitutional violation). And plaintiffs have fared no better where psychological damage has formed either the sole basis of or been an element of the plaintiff's substantive due process claim. See Abeyta, 77 F.3d at 1258 (holding that where twelve-year old plaintiff was called a prostitute in front of her class and allegedly suffered psychological injury, teacher's actions did not rise to the level of a constitutional tort as they did not "shock the conscience"); Kurilla, 68 F.Supp.2d at 558 (holding that while teacher's punch to student's chest caused bruising and anxiety attacks in plaintiff, such conduct and the resultant injury did not shock the conscience); Jones, 931 F.Supp. at 365 (student suffered "continuing psychological trauma" and other injuries from being thrown over a desk by a teacher, nonetheless, such conduct did not "shock the conscience"). Accordingly, assuming the facts in a light most favorable to Plaintiffs, the Court holds as a matter of law that no reasonable jury could conclude that Daniel's alleged injuries in this case are "severe" under the Hall analysis and thus the alleged abuse does not rise to the level of a constitutional violation.

Brown, 121 F.Supp.2d at 923.

In Johnson v. School District of Philadelphia, 2008 WL 3927381 (E.D. Pa. 2008), a school police officer grabbed the plaintiff during a heated argument and "lifted her off her feet, slammed her onto the floor and dragged her into the police office." Id. at *2. Plaintiff, the mother of a student at the school,[2] sustained "a superficial puncture and hemorrhage in her eye" but did not suffer any damage to her eye or her vision. Id. at *6. After reviewing the four-part inquiry set forth in Gottlieb, the court held that the absence of a "serious" injury was dispositive:

> Ms. Johnson cannot establish the fourth element and, therefore, summary judgment is appropriate. Ms. Johnson must demonstrate that she sustained a "serious" injury as a result of the force used. No records exist from the hospital where Ms. Johnson was taken for treatment. Ms. Johnson's treatment consisted of being "cleaned up" and given some ice. Ms. Johnson has produced records from Wills Eye Hospital detailing her visit six days after her arrest. While those records indicate a diagnosis of a superficial puncture and hemorrhage in here eye, Ms. Johnson testified that the hospital confirmed that her eyes and vision were fine, and she received no treatment. In sum, the level of severity of Ms. Johnson's injury does not rise to the levels of severity found in the case law where summary judgment has been denied.

Id. at *6 (citations omitted).

Here, Plaintiffs concede that JGS did not suffer *any* physical injury as a result of the hand sanitizer incident. Rather, Plaintiffs contend only that JGS suffered psychological damage allegedly manifested by educational and social regression and a negative attitude towards women. I conclude, based on the previously described caselaw, that the Plaintiffs' substantive due process claim fails on the basis of the undisputed lack of any physical injury, much less a serious one.[3]

---

[2] Although the plaintiff, Johnson, was not a student, the court determined that her excessive force claim was appropriately analyzed pursuant to the "shocks the conscience" standard of Gottlieb, rather than the "reasonableness" standard set forth in Fourth Amendment jurisprudence, because the police officer defendant was a school official. Id. at *5.

[3] Even if psychological trauma alone could satisfy the "serious injury" prong of Gottlieb, Plaintiffs' substantive due process claim would fail, in any event, on this record. Plaintiffs' counsel conceded at oral argument that there is no

(continued...)

Finally, although the lack of any injury is dispositive, a brief analysis of the other Gottlieb factors lends further support for the conclusion that the incident is not properly viewed as "conscience shocking" for substantive due process purposes.

The first prong of the Gottlieb analysis requires the Court to determine whether there is a "pedagogical justification" for the use of force. Gottlieb, 272 F.3d at 173. This prong focuses on "whether a plausible pedagogical motivation for the use of force existed, not whether the use of force was defensible." Thomas, 467 F.Supp.2d at 483. In other words, our focus is not on whether the particular force utilized was appropriate, but on whether there was a pedagogical justification for using some type of force at all. "At the very least, the force must be capable of being construed as an attempt to serve pedagogical objectives." Gottlieb, 272 F.3d at 174.

In Gottlieb, an assistant principal pushed a student's shoulder with his hand, propelling her backwards into a door jam where she struck and injured her lower back. At the time of the incident, the student was standing obediently in the principal's doorway, awaiting disposition after an altercation with another student. Id. at 174. The Court held that the use of force in that instance served no pedagogical objective because, although the student had been insubordinate earlier, at the time of the alleged push the student was standing obediently in the doorway. Id. In contrast, the Court noted that "where a school official grabs a student to break up a fight, chokes a student when hearing him curse, or paddles a student for misbehaving, the reason that the administrator resorts to force is evident." Id.

Here, it is undisputed that, at the time of the alleged incident, JGS was standing up and screaming obscenities and threats at staff and students during class time. During previous incidents

---

³(...continued)
competent psychological or psychiatric evidence of record to support a claim of psychological injury. Indeed, it is undisputed that no psychiatric or psychological expert has ever examined JGS to determine whether he, in fact, sustained an identifiable psychological injury that was causally related to the incident. See Williams v. York Intern. Corp., 63 Fed. Appx. 808, 814 (6th Cir. 2003) (holding that a plaintiff's "own opinion" that he suffered a psychological injury as a result of abuse was not sufficient to defeat summary judgment).

of a similar nature, JGS had threatened to injure or kill other students and administrators and, on one occasion, stabbed a fellow student with a sharpened pencil. Courts have universally held that utilizing force in reaction to a disruptive student serves a pedagogical objective. See, e.g., Gottlieb, 272 F.3d at 174; Thomas, 467 F.Supp.2d at 488-89 (concluding that a student's failure to complete a homework assignment raised "issues of general preparedness and discipline" that created a "clear" pedagogical justification for the use of force); Kurilla v. Callahan, 68 F.Supp.2d 556, (M.D. Pa. 1999) (holding that a teacher's use of force in response to an altercation between students served a pedagogical objective because the teacher "was reacting to a disruptive student"). The record in this case conclusively establishes that there was a pedagogical justification for the use of the alleged force.

The fourth factor of the Gottlieb test asks whether the force utilized "was applied in a good faith effort to maintain or restore discipline or maliciously . . . for the very purpose of causing harm." Gottlieb, 272 F.3d at 175 (quoting Metzger, 841 F.2d at 520). The Third Circuit has explained this element as requiring that both the allegedly unconstitutional contact and the resulting harm must have been intended. Id. "It is not enough to determine that in some broad sense the defendant knew, or intended, that his action be harmful. The fact finder must determine that the actor primarily intended the action to be harmful, and that the primary reason for the use of force was to cause harm, not, for instance, to discipline or restore order." Thomas, 467 F.Supp.2d at 489. Although "[a] teacher's statement that he did not intend to harm the student, by itself, [is] not enough to establish conclusively that the teacher did not intend to harm the student," Gottlieb, 272 F.3d at 175, courts have nonetheless granted summary judgment where the record could not reasonably support an inference of an intent to cause harm. Id. (citing Gottlieb, 272 F.3d at 175).

In Jones v. Witinski, for example, a teacher became angry at a disruptive student and, after asking the student to leave the class, grabbed the student by the arm and pulled him across a desk and onto the floor. The student alleged that he had suffered physical injuries and "continuing psychological trauma." The court rejected the student's argument that "pulling a student by the

arm" is "a brutal and inhumane abuse of official power literally shocking to the conscience." Jones, 931 F.Supp.364, 371 (M.D. Pa. 1996). It further stated:

> The fact that Jones may have sustained serious injury as a result of the fall is extremely unfortunate, but does not alter the character of [the teacher's] acts. It appears from all the evidence before us that [he] never intended to harm Jones nor cause him to fall against the bulletin board. There is no evidence which suggests otherwise . . . [or] to suggest that [the teacher's] grabbing the plaintiff was anything other than a disciplinary measure.

Id. at 371. Similarly, in Gottlieb, the Third Circuit held that the "slight nature" of the contact between the teacher and the student belied any intent to harm:

> Carbonara did nothing more than place his hand on Gottlieb's shoulder and push her back inches to the door jamb. The push itself was so minor that even if the injuries she alleges occurred, it cannot be inferred from the act itself that Carbonara intended to act maliciously and sadistically so as to constitute a constitutional violation.

Gottlieb, 272 F.3d at 175. See also Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 719 (6th Cir. 1996) (holding that it was "simply inconceivable" that a single slap to the face administered by a soccer coach to a 14 year old female student "could shock the conscience"); Thomas, 467 F.Supp.2d at 491 (finding that "a single punch to the shoulder" was insufficient "to permit a reasonable fact finder to make a finding of malice.").

In the present case, the record does not support a reasonable inference that the action attribute to Nosko by the Plaintiffs was taken for "the very purpose of causing harm." Gottlieb, 272 F.3d at 175. Nosko's affidavit states that she placed her hand over JGS's mouth in an attempt to restore order and discipline at a time when JGS was loudly screaming obscenities and otherwise "acting out" during class time. It is uncontested that JGS was, in fact, acting out at the time in the manner described by Nosko. In addition, the statement attributed to Nosko by JGS, namely, that "[t]his is the way we handle little boys who use bad words in our house," reflects an intent to discipline and/or maintain order as opposed to maliciously cause injury. Finally, although the lack of any injury or harm does not conclusively establish an absence of intent to cause it, this factor lends

further support for the conclusion that the Plaintiffs have failed to raise a triable issue of fact as to this prong of the Gottlieb test.[4]

Plaintiffs' also have raised a claim for supervisory liability against Corklin based upon the allegation that she had supervisory authority over Nosko and was present at the time of the allegedly unlawful misconduct. It is axiomatic that an individual cannot be derivatively liable for a constitutional claim that lacks legal or evidentiary merit. See, e.g., City of Los Angeles v. Heller, 475 U.S. 769, 799 (1986) (concluding that supervisory or municipal liability requires an underlying constitutional violation); Frazier v. Daniels, 2010 WL 2040763 (E.D. Pa. 2010) (dismissing a supervisory liability claim because the underlying claim lacked merit). Given my conclusion that Plaintiffs' constitutional claim against Nosko lacks merit, summary judgment is also appropriate as to Plaintiffs' supervisory liability claim against Corklin.

## IV. CONCLUSION

Placing liquid hand sanitizer in a child's mouth in an attempt to discipline and/or maintain order is, to be sure, a completely inappropriate and unjustifiable response on the part of a teacher. That said, for the reasons previously discussed, the alleged conduct is insufficient, on this record, to support a claim based upon a violation of JGS's substantive due process rights.

---

[4] As to the second prong of the Gottlieb test, I do find that a jury could reasonably conclude that the action of placing liquid hand sanitizer in JGS's mouth represented an excessive amount of force to meet the legitimate objectives of disciplining and/or maintaining order. However, in light of my previous analysis of the other Gottlieb factors, the issue of fact relative to the excessiveness of the force is not, in any sense, material.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JGS, a minor and JAMES HAROLD STERNER, | |
| Plaintiffs, | |
| v. | C.A. No. 08-39 Erie |
| | District Judge McLaughlin |
| TITUSVILLE AREA SCHOOL DISTRICT, *et al.*, | |
| Defendant. | |

## ORDER

AND NOW, this 26th day of August, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED and this action is DISMISSED. Judgment is entered in favor of Defendants and against Plaintiffs.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___